UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3580(DSD/SRN)

Pilots Representation Organization,

       Plaintiff,

v.                                                         **ORDER**

Airline Pilots Association,
International,

       Defendant,

and

Thomas D. Anderson, Michael
Hamel, Fredric M. Stephens
and Joseph Kannapell, as the
Merger and DRC Representatives
of the "Red Book" Pilots,

       Intervenors-Defendants.

      Paul W. Iversen, Esq., Richard A. Williams, Jr., Esq. and
      Williams & Iversen, 1611 West County Road B, Suite 208,
      Roseville, MN 55113, counsel for plaintiff.

      Robert V. Atmore, Esq., Nicole M. Siemens, Esq., Marnie
      L. DeWall, Esq. and Lindquist & Vennum, 4200 IDS Center,
      80 South Eighth Street, Minneapolis, MN 55402 and Richard
      M. Seltzer, Esq., Peter D. DeChiara, Esq. and Cohen,
      Weiss and Simon, 330 West 42nd Street, New York, NY
      10036, counsel for defendant.

      Martin J. Costello, Esq., Katrina E. Joseph, Esq. and
      Hughes & Costello, 1230 Landmark Towers, 345 St. Peter
      Street, St. Paul, MN 55102 and Wesley Kennedy, Esq. and
      Allison, Slutsky & Kennedy, 230 West Monroe Street, Suite
      2600, Chicago, IL 60606, counsel for Intervenors.

This matter is before the court upon plaintiffs' motion for a temporary injunction and movants' motion to intervene. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants movants' motion and denies plaintiffs' motion.

## BACKGROUND

This action to enjoin an arbitration arises in the context of the 1986 merger between Northwest Airlines ("NWA") and Republic Airlines ("Republic"). At the time Republic became part of NWA, each airline had a collective bargaining agreement with defendant Air Line Pilots Association International ("ALPA"), the pilots' union. To create an integrated seniority list for the two groups of pre-merger pilots and to maintain its own neutrality, ALPA implemented its 1985 merger policy. The policy required the pre-merger NWA pilots ("Red Book pilots") and pre-merger Republic pilots ("Green Book pilots")[1] to select merger representatives who were required to submit their differences to final and binding arbitration if they could not negotiate an integrated seniority list themselves. (Watt Aff. Ex. B.) This process led to the 1989 Roberts Award, an arbitration award named for the arbitration

---

[1] The collective bargaining agreement between NWA and ALPA had a red cover, and the agreement between Republic and ALPA had a green cover. Thus, the pre-merger NWA pilots are known as Red Book pilots while the pre-merger Republic pilots are Green Book pilots.

board's chair, Thomas T. Roberts, that established an integrated seniority list and conditions and restrictions on the assigning of pilots. The Roberts Award set a January 1, 2006, deadline for the enforcement of those conditions and restrictions.

Because of the complexity of the award, in 1990 NWA, ALPA, the Red Book pilots and the Green Book pilots entered into an agreement that established a dispute resolution committee ("DRC") to handle future disputes. If the committee deadlocked on a matter, the DRC agreement provided for three types of arbitration to resolve the claim: article VI arbitration for questions regarding the DRC's jurisdiction over a claim; article VII arbitration for non-jurisdictional claims; and article VIII arbitration for disputes between ALPA and NWA. (Watt Aff. Ex. D.) The DRC agreement stated that it would run concurrent with the Roberts Award - until January 1, 2006. Pursuant to ALPA's merger policy, each group of pre-merger pilots created a merger committee, the GBMC for the Green Book pilots and the RBMC for the Red Book pilots. These member committees were the official representatives of each pilot group under the DRC agreement.

In 2004 and 2005, NWA contacted the GBMC and RBMC to inform them that all claims under the DRC agreement must be resolved before January 1, 2006. ALPA's master executive council ("MEC"), the governing body for all NWA pilots, also decided to cease funding allocations in its 2006 budget for DRC disputes. These

decisions and the general uncertainty surrounding the effect of the January 1, 2006, deadline led to disputes between the Green Book and Red Book pilots. Indeed, two claims filed with the DRC before January 1, 2006, concerned the rights of pilots and the interpretation of the DRC after the January 1 deadline.[2] (See Watt Aff. at ¶ 19; Couette Decl. Ex. 5.) The resolution of these claims is the basis for this action. The GBMC refused to process the claims, arguing that they were waived because they were unresolved by January 1. The RBMC argued that the DRC agreement remained in effect until all claims presented under it were decided.

Faced with these pending claims, ALPA's MEC for NWA requested at its June 2006 meeting that the ALPA Executive Council[3] assist in the resolution of the issues between the GBMC and RBMC. In August 2006, with input from GBMC and RBMC representatives, the Executive Council considered the MEC's request. On November 29, 2006, the

---

[2] DRC claim #03-165 is a GBMC claim regarding the rights of displaced pilots under section 24 of the collective bargaining agreement after January 1, 2006. DRC claim #03-166 is a RBMC claim regarding the interpretation and application of paragraph 20 of the Roberts Award after January 1, 2006. As of January 1, 2006, the GBMC claim was at a section VII arbitration stage and the RBMC claim was at a section VI jurisdictional arbitration stage. (Watt Aff. at ¶ 19.)

[3] The ALPA Executive Council is an ALPA governing body composed of ALPA's four principal national officers and ten executive vice presidents. It has broad governance powers, and under ALPA's merger policy, the Executive Council determines issues as to the application or interpretation of the merger policy. (See Watt Aff. Exs. A, C.)

4

Executive Council passed a resolution addressing the remaining claims. The Council did not take a position on the merits but ordered that the claims be submitted to arbitration under section VII of the DRC agreement. The resolution urged that each pilot group assure that two DRC members and two merger representatives participate in the arbitration.[4]

ALPA then attempted to proceed with the arbitration. In a February 21, 2007, letter to former Green Book pilot representatives, ALPA president Captain John Prater gave his assurance that participating in the arbitration would not constitute a waiver of any challenges the Green Book pilots had to arbitration of the claims. (See Couette Decl. Ex. 11.) The Green Book pilots struggled to find new merger committee and DRC representatives until Captain Mark McCain eventually agreed to serve as chairman of the GBMC. After McCain missed a June 15, 2007, meeting for selecting arbitrators, Prater sent him an August 1, 2007, letter rescheduling arbitrator selection for August 8, 2007, and stating his intent to proceed on August 8 with or without GBMC representation.

On August 2, 2007, plaintiff Pilots Representation Organization ("PRO"), a nonprofit organization whose members include Green Book pilots affected by the Executive Council's

---

[4] This exhortation was directed at the Green Book pilots, whose merger and DRC representatives resigned on January 1, 2006, believing that the Roberts Award and DRC agreement had expired.

resolution, filed this action against ALPA.[5]  Plaintiffs assert that nothing in the ALPA constitution or merger policy gives ALPA the authority to compel arbitration where no agreement exists to mandate or govern the arbitration.[6]  Further, plaintiffs argue that the ALPA Executive Council's November 29 resolution compelling section VII arbitration violated ALPA's policy to remain neutral as to the pre-merger pilot groups by essentially deciding two section VI arbitration proceedings in the RBMC's favor.

Plaintiffs moved the court for a temporary restraining order on August 3, 2007, to prevent the August 8, 2007, arbitrator selection meeting.  Judge John R. Tunheim issued an order on August 6, 2007, granting plaintiff's motion "to the extent necessary to maintain the status quo and in particular to postpone the August 7, 2007, [sic] meeting to choose an arbitrator until further order of the Court."  (Judge Tunheim Order of Aug. 6, 2007.)  The following day, Judge Tunheim recused himself from the case, and the matter was transferred to the undersigned.  On August 10, 2007, movants Thomas Anderson, Michael Hamel, Frederic Stephens and Joseph Kannapell, as the merger and DRC representatives of the Red Book pilots, filed a motion to intervene pursuant to Federal Rule of

---

[5] On August 9, 2007, PRO amended its complaint to include individual Green Book pilots Donald Arnold, James Shaner and Vance Watt as plaintiffs in the action.

[6] Plaintiffs maintain that after January 1, 2006, the DRC agreement and Roberts Award no longer govern the claims.

6

Civil Procedure 24. The court now considers movants' motion to intervene and plaintiff's motion to continue the temporary injunction in turn.

**DISCUSSION**

**I. Motion to Intervene**

Movants Anderson, Hamel, Stephens and Kannapell argue that they are entitled to intervene as a matter of right because the action concerns matters in which they are interested and ALPA will not adequately represent them. Alternatively, movants argue that they should be permitted to intervene because their claim or defense shares common questions of law or fact with the claims asserted in plaintiff's complaint. Plaintiffs argue that intervention is inappropriate because the action involves only the neutrality of the ALPA and not an interpretation of the DRC that would implicate the Red Book pilots. Further, to the extent that the Red Book pilots support ALPA's order to arbitrate, plaintiffs assert that the interests of ALPA and the Red Book pilots coincide, making intervention unnecessary.

Upon timely application, a party shall be permitted to intervene as a matter of right in an action if it establishes that (1) it has a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing

parties. Fed. R. Civ. P. 24(a); see Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 571 (8th Cir. 1998). A party unable to meet these requirements may still be permitted to intervene upon timely application when an applicant's claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b). In such a case, the court considers whether permissive intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." Id.; see Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 485 F.3d 1006, 1009 (8th Cir. 2007).

Here, the court finds that movants meet the three requirements to intervene as a matter of right. As a party to the proposed arbitration, the movants have an interest in the subject matter of the litigation. Moreover, even assuming that plaintiffs' action is directed only at ALPA, any decision affecting the arbitration would impact movants. Finally, because ALPA purports to be a neutral party as between the Green Book and Red Book pilots, ALPA cannot adequately protect the Red Book pilots' interests throughout the course of litigation, despite the current alignment of interests. For these reasons, the court grants movants' motion to intervene pursuant to Federal Rule of Civil Procedure 24(a).[7]

---

[7] Even if movants did not meet the requirements to intervene as a matter of right, the court would permit intervention under Rule 24(b) because movants' claim that the court should enforce the November 29 resolution shares common questions of law and fact with
(continued...)

**II. Jurisdiction to Issue Injunctive Relief**

As an initial matter, ALPA argues that the Norris LaGuardia Act ("NLGA"), 29 U.S.C. §§ 101-115, deprives the court of jurisdiction to enjoin labor arbitrations. Plaintiffs argue that the action is not a labor dispute governed by the NLGA but instead a breach of contract claim under the Railway Labor Act ("RLA")[8] upon which the court can act.

The NLGA deprives federal courts of jurisdiction "to issue any restraining order or permanent injunction in a case involving or growing out of a labor dispute," except in strict conformity with the Act's provisions. 29 U.S.C. § 101. A "labor dispute" under the NLGA is broadly defined to include any controversy "concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relationship of employer and employee." 29 U.S.C. § 113(c). Although limiting injunctions in order to further the "strong federal policy of encouraging arbitration," <u>Taylor v. Sw. Bell Tel.</u>

---

[7](...continued)
plaintiff's claims and because intervention does not unduly delay or prejudice adjudication of the original parties' rights.

[8] Enacted in 1926 and expanded in 1936, the Railway Labor Act, 45 U.S.C. §§ 151-188, governs labor relations on the nation's railroads and airlines. <u>See</u> Katherine Van Wezel Stone, <u>Labor Relations on the Airlines: The Railway Labor Act in the Era of Deregulation</u>, 42 Stan. L. Rev. 1485, 1494 (1990).

Co., 251 F.3d 735, 742 (8th Cir. 2001), the NLGA provides several conditions under which an injunction is appropriate. Specifically, the court may grant injunctive relief if, after hearing the testimony of witnesses in open court, it finds that without an injunction the moving party would experience "substantial and irreparable injury" and have "no adequate remedy at law."  29 U.S.C. §§ 107(b), (d).

Where airlines are involved, the court considers the NLGA in relation to the RLA.  See Bhd. of R.R. Trainmen v. Chi. River & Indep. R.R. Co., 353 U.S. 30, 40 (1957).  When specific provisions of the RLA are implicated, those provisions "take precedence over the more general provisions of the [NLGA]."  Id. at 42.  If the RLA trumps the NLGA, a district court "has jurisdiction to issue necessary injunctive orders to enforce compliance with the requirements of the RLA notwithstanding the provisions of the NLGA."  Delta Air Lines, Inc. v. Air Line Pilots Assoc., Int'l, 238 F.3d 1300, 1306 (11th Cir. 2001) (internal quotation omitted).  In other words, only a violation of a specific RLA mandate supports an injunction under the NLGA.  See Burlington N. R.R. Co. v. Bhd. of Maint. of Way Employees, 481 U.S. 429, 445-46 (1987).

Plaintiffs have identified no specific provision of the RLA that takes precedence over the NLGA.  Therefore, the court has no jurisdiction to issue injunctive relief unless plaintiffs fall within a NLGA exception.  Plaintiffs argue that they will be

10

irreparably harmed and left without legal recourse if forced to arbitrate the claims.  Specifically, they argue that they will forever lose their right to an appropriate threshold ruling on whether the DRC agreement has any force and effect beyond January 1, 2006, be denied ALPA's neutrality and be forced to incur the costs of arbitration.  The court disagrees.

Participation in an arbitration does not constitute a forfeiture of an arbitrability defense.  See Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101-02 (8th Cir. 2004).  Plaintiffs can raise the issue with the arbitrator and, if ruled against, can raise the issue on appeal in court.  See AT&T Broadband, LLC v. Int'l Bhd of Elec. Workers, 317 F.3d 758, 762 (7th Cir. 2003).  Moreover, ALPA president Prater assured plaintiffs that their participation in arbitration would not prejudice any positions they might advance later.  (See Couette Decl. Ex. 11.)  Accordingly, plaintiffs will not be irreparably harmed or left without legal recourse if they participate in arbitration.

Additionally, although plaintiffs disagreed with ALPA's decision, they have not shown that the Executive Council acted based on anything but the belief that it had the authority to resolve disputes related to the merger policy as it saw fit.  Nor have plaintiffs alleged that the Executive Council acted in bad faith.  Therefore, there is no evidence that ALPA's neutrality

would be jeopardized if an injunction did not issue. As to plaintiff's claim that they will incur arbitration costs that might not be repaid, it has been long established that the expense of adjudication is not irreparable injury. See FTC v. Standard Oil Co., 449 U.S. 232, 244 (1980).

For these reasons, plaintiffs will not incur irreparable injury or be left without a remedy at law if the court does not issue an injunction. Accordingly, plaintiffs' claims do not fall within the exceptions for injunctive relief identified in the NLGA, and the court does not have jurisdiction to issue an injunction in this matter.[9]

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that:

1. Movants Thomas Anderson, Michael Hamel, Frederic Stephens and Joseph Kannapell's motion to intervene [Doc. No. 28] is granted;

2. To the extent that it still had effect, the August 6, 2007, temporary restraining order [Doc. No. 22] is vacated.

3. Plaintiffs PRO, Donald Arnold, James Shaner and Vance

---

[9] In the alternative, even if the court found that the NLGA did not prevent it from issuing an injunction, plaintiffs' failure to demonstrate irreparable harm would prevent the court from issuing injunctive relief under the Dataphase factors used in the Eighth Circuit to analyze motions for temporary injunctions. See Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Watt's continued motion for a temporary injunction [Doc. No. 2] is denied.

Dated: August 24, 2007

                                                <u>s/David S. Doty</u>
                                                David S. Doty, Judge
                                                United States District Court